Filed 6/17/26  P. v. Gonzalez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F089570 |
| Plaintiff and Respondent, | (Super. Ct. No. BF198308A) |
| v. | |
| DAISY STEPHANIE GONZALEZ, | OPINION |
| Defendant and Appellant. | |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Stephanie L. Gunther, under appointment by the Court of Appeal, Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Peña, J. and De Santos, J.

**<u>INTRODUCTION</u>**

Defendant Daisy Stephanie Gonzalez (defendant) pled no contest to driving under the influence of alcohol causing great bodily injury, admitting enhancements and an aggravating factor, for the trial court's indicated sentence of three years of felony probation and one year in jail. Defendant contends on appeal that the court failed to fully advise her of the direct consequences of her plea or her right to a jury trial on her aggravating factor and therefore, her plea and admissions were not knowingly and intelligently made. The People disagree, contending the record shows defendant was adequately advised and her plea was voluntary and intelligent given the totality of the circumstances. We agree with the People and affirm the judgment.

**<u>PROCEDURAL SUMMARY</u>**

On February 22, 2024, the Kern County District Attorney charged defendant with one count of driving under the influence (DUI) of alcohol causing injury (Veh. Code, § 23153, subd. (a)) and one count of driving with .08 percent blood alcohol content causing injury (Veh. Code, § 23153, subd. (b)). It was further alleged as to each count that defendant caused great bodily injury (Pen. Code,[1] § 12022.7, subd. (a)), had a blood alcohol level in excess of .15 percent (Veh. Code, § 23578), caused injury to more than one person (Veh. Code, § 23558), and that certain aggravating factors enumerated in the California Rules of Court,[2] rule 4.421 applied.

On January 16, 2025, the complaint was amended by the prosecution to specify that the victim was particularly vulnerable, pursuant to rule 4.421(a)(3). Defendant entered an open plea of no contest to the charged offenses and admitted the enhancements and the aggravating factor under rule 4.421(a)(3) with a court-indicated sentence of felony probation with one year to be served in county jail.

---

[1]     Subsequent undesignated statutory references are to the Penal Code.

[2]     Subsequent undesignated rules are to the California Rules of Court.

2.

On March 20, 2025, the trial court followed its indicated and sentenced defendant to three years of felony probation and ordered her to serve the first year in jail.

On March 26, 2025, defendant filed a notice of appeal. Defendant was granted a certificate of probable cause.

## FACTUAL SUMMARY

On February 20, 2024, defendant was involved in a traffic accident. Two volunteers from a homeless outreach organization were attempting to gather a homeless woman, K.B., into their vehicle that was parked along the side of the road. The prosecution alleges the vehicle was parked along the curb, not in the traffic lane and not blocking traffic. Defendant alleges the vehicle was at least partially in the No. 3 traffic lane.

Defendant was driving her vehicle at about 30 miles per hour when she collided with the rear portion of the parked vehicle. Defendant struck the volunteers and K.B. with her vehicle, causing minor injuries to one of the volunteers and spinal compression fractures to the L1 and L4 vertebrae of the second volunteer. K.B. was severely injured and sustained a brain bleed, fracture to her maxillary sinus and lacerations to her forehead, eyebrow and lip.

Defendant remained at the scene of the accident and spoke with law enforcement officers, who immediately observed objective signs of intoxication on defendant. Defendant denied consuming any alcohol, but her preliminary alcohol screening test indicated she had a blood alcohol level of 0.275 percent. The test results from a blood draw confirmed defendant's blood alcohol level was 0.26 percent.

## DISCUSSION

**Relevant Factual and Procedural Background**

The minute order from the January 16, 2025 plea hearing reflects that defendant "ple[d] to counts 1 and 2 and admit[ted] the enhancements" for a disposition of felony

probation.  (Capitalization omitted.)  Further, the minute order states, "[t]hrough counsel, the court is informed defendant has been informed of legal rights and waives further informing of rights."  (Capitalization omitted.)

A written change of plea and waiver of rights form was completed, initialed and signed by defendant and her counsel.  The plea form lists the charged offenses, enhancements and aggravating factor, and the court-indicated sentence of felony probation with one year of county jail time.  On the form, defendant affirmed an understanding of all relevant rights and consequences therein.  And the form memorializes her waiver of those rights.  Counsel confirmed that he had explained the "direct consequences" that would result from the plea.

At the change of plea hearing, the following colloquy occurred:

"[THE COURT]:  All right.  [Defendant], did you read and understand the waiver of rights form that you initialed and signed?

"[DEFENDANT]:  Yes, Your Honor.

"[THE COURT]:  Are you willing to give those rights up today?

"[DEFENDANT]:  Yes, Your Honor.

"[THE COURT]:  Has anyone promised you anything other than what I just said here in court or what's in this form to get you to plead guilty or no contest?

"[DEFENDANT]:  No, Your Honor.

"[THE COURT]:  Has anyone threatened you or anyone close to you to get you to plead guilty or no contest?

"[DEFENDANT]:  No, Your Honor.

"[THE COURT]:  Before you change your plea, do you have any questions for your attorney or for me?

"[DEFENDANT]:  No, Your Honor.

"[THE COURT]:  All right.  [¶ ]  [Defense counsel], do you join in her waiver of rights?

4.

"[DEFENSE COUNSEL]:  Yes, Your Honor."

**Applicable Law and Standard of Review**

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary." (*People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*); see *Boykin v. Alabama* (1969) 395 U.S. 238, 243–244 (*Boykin*).)  Such responsibility requires the courts to inform the defendant of the privilege against self-incrimination, the right to trial by jury, and the right to confrontation, commonly referred to as the *Boykin-Tahl* advisements.  (*Cross*, at p. 170; *Boykin,* at pp. 243–244; *In re Tahl* (1969) 1 Cal.3d 122, 130–133 (*Tahl*).)  "In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute."  (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605; see *People v. Panizzon* (1996) 13 Cal.4th 68, 83 (*Panizzon*).)  The same requirements of advisement and waiver apply when a defendant admits the truth of a prior conviction allegation that subjects him to increased punishment.  (*In re Yurko* (1974) 10 Cal.3d 857, 865.)

"However, a court may rely upon a defendant's validly executed waiver form as a proper substitute for a personal admonishment."  (*Panizzon, supra,* 13 Cal.4th at p. 83.)  [A] defendant who has signed a waiver form [waiving *Boykin–Tahl* rights] upon competent advice of his attorney has little need to hear a ritual recitation of his rights by a trial judge."  (*In re Ibarra* (1983) 34 Cal.3d 277, 286 (*Ibarra*), disapproved on another ground in *People v. Howard* (1992) 1 Cal.4th 1132, 1175-1178.)  " 'Only if in questioning the defendant and his attorney the trial court has reason to believe the defendant does not fully comprehend his rights, must the trial court conduct further canvassing of the defendant to ensure a knowing and intelligent waiver of rights.' "  (*Panizzon*, at p. 83.)

Therefore, "[t]he validity of a guilty or nolo contendere plea requires a record demonstrating that the defendant understood the nature of the charges and the direct

consequences of conviction, including the possible range of punishment." (*People v. Lytle* (1992) 10 Cal.App.4th 1, 4; see also *People v. Johnson* (1977) 66 Cal.App.3d 197, 199 [court must advise defendant of range of punishment].)  Absent something in the record raising a doubt, a written waiver of rights and attorney's attestations is sufficient to show waiver was knowingly, voluntarily, and intelligently made.  (*People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 400 (*Cisneros-Ramirez*).)

**Analysis**

Defendant contends the trial court erred when it did not advise her (1) of the maximum punishment provided by statute for her pleas and admissions or (2) of the right to a jury trial and penal consequences of her factor in aggravation.  A trial court must inform the defendant of the right to a jury trial (*Cross*, *supra*, 61 Cal.4th at p. 170; *Yurko, supra,* 10 Cal.3d at p. 865) and direct consequences of the plea, such as the permissible range of punishment provided by the statute (*Bunnell, supra,* 13 Cal.3d at p. 605).  The record from the change of plea hearing shows the trial court did not orally advise defendant of the maximum punishment of her plea or of the right to a jury trial or advisement of the penal consequences of the aggravating factor.

"The failure to properly advise a defendant of his or her trial rights is not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' " (*Cross, supra,* 61 Cal.4th at p. 179.) The totality of the circumstances test "applies in *all* circumstances where the court fails, either partially or completely, to advise and take waivers of the defendant's trial rights before accepting a guilty plea." (*People v. Farwell* (2018) 5 Cal.5th 295, 303.)  In *People v. Mosby* (2004) 33 Cal.4th 353, the court clarified that in applying the totality of the circumstances test, a reviewing court must "review[ ] the whole record, instead of just the record of the plea colloquy." (*Id.* at p. 361.)

Failure to create an oral record of waiver of rights "does not necessarily invalidate defendant's waiver" where a written waiver is completed and there is no indication that

defendant failed to understand what they were reading and signing. (*People v. Blair* (2005) 36 Cal.4th 686, 709.) In this regard, our high court held that a "court may rely upon a defendant's validly executed waiver form as a proper substitute for a personal admonishment." (*Panizzon*, *supra*, 13 Cal.4th at p. 83; *Ibarra, supra,* 34 Cal.3d at p. 286 ["a defendant who has signed a waiver form [waiving *Boykin–Tahl* rights] upon competent advice of his attorney has little need to hear a ritual recitation of his rights by a trial judge."].)

In *Panizzon*, the trial court did not admonish the defendant regarding the right to appeal. (*Panizzon*, *supra*, 13 Cal.4th at p. 83.) However, the waiver and plea agreement signed by the defendant and his attorney contained defendant's representations that he understood the sentence that would be imposed if he pled no contest, that he had discussed both the paragraph specifying the sentence to be imposed and the paragraph containing the waiver of the right to appeal with his attorney, and that he fully understood all matters set forth in the document. (*Id*. at p. 84.) The plea agreement contained defense counsel's representation that he personally went over the document with defendant and concurred in defendant's decision to waive the rights specified in the document, as well as counsel's stipulation that the trial court could consider the document as evidence of defendant's intelligent waiver of such rights. (*Ibid*.) At the court hearing, both the defendant and his attorney attested to the document's valid execution and the in-court questioning raised no doubts as to the defendant's understanding of his rights and the consequences of his no contest plea. (*Ibid*.) Under these circumstances, the *Panizzon* court was satisfied that defendant's waiver of the right to appeal the bargained sentence was knowing, intelligent, and voluntary despite the absence of a specific admonishment by the trial court. (*Ibid.*)

Similarly here, even though the trial court did not orally advise defendant of her right to a jury trial on the aggravating factor, or the direct consequence of the plea, including the maximum punishment, the waiver and plea agreement signed by the

7.

defendant and her attorney contained defendant's representations that she understood the direct consequences of her plea, her relevant rights, including her right to a jury trial, and her waiver of those rights. The plea form indicated that she had discussed each item in the form with her attorney, including the paragraphs specifying the sentence to be imposed, the direct consequences of her plea and the waiver of the right to a jury trial, and that she fully understood all matters set forth in the document. The plea agreement also included defense counsel's own representation that he personally went over the form with defendant, explained each of the rights to her, informed her of the direct consequences of her plea, was satisfied defendant understood her rights and concurred in defendant's decision to waive her rights. At the court hearing, defendant responded affirmatively that she read and understood the plea form and waiver of rights and that she was willing to give up those rights. Defendant's counsel joined in her waiver. Therefore, like in *Panizzon*, both the defendant and her attorney attested to the document's valid execution, and the in-court questioning of defendant and her attorney raised no doubts as to defendant's understanding of her rights and the consequences of her no contest plea. (See *Panizzon*, *supra*, 13 Cal.4th at p. 83; *Cisneros-Ramirez, supra,* 29 Cal.App.5th at p. 400; *Ibarra, supra,* 34 Cal.3d at p. 286.) Under the totality of the circumstances, the record demonstrates defendant's plea was knowing and intelligent, despite the absence of specific admonitions by the trial court.

Defendant's complaint that neither the plea form nor the oral record shows defendant was advised of the specific maximum sentence fails to recognize that defense counsel attested in the plea form to discussing with defendant her rights and the direct consequences of her plea, which necessarily entails the maximum sentence of her plea. Absent any doubt arising from the record, a written waiver of rights and attorney's attestations are sufficient to show the waiver was knowing, voluntary and intelligent. (See *Cisneros-Ramirez*, *supra*, 29 Cal.App.5th at p. 400.) Here, there is nothing in the

record raising doubt regarding defendant's understanding of her rights and the consequences of her no contest plea and admissions.

Although defendant cites the dissent in *Ibarra* to argue courts should not settle for the waiver form with the attorney's assent to satisfy the required advisements, dissenting opinions are not binding precedent. (*People v. Lopez* (2012) 55 Cal.4th 569, 585.) The majority in *Ibarra* held that a signed waiver form which confirms receipt of counsel's advice on the pertinent issues eliminates the need for "ritual recitation" from a judge and satisfies "the dictates of *Boykin* and *Tahl*." (*Ibarra*, *supra*, 34 Cal.3d at pp. 285–286.) It is the majority opinion of our Supreme Court that we are bound by. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Last, defendant relies on *People v. Kinnear* (2025) 116 Cal.App.5th 1116 to argue the court was required to advise her of her right to a jury trial and the penal consequences of the aggravating factor. However, *Kinnear* is readily distinguished. In *Kinnear*, the court bifurcated the prior conviction allegations and aggravating factors to be addressed after the jury trial on the charged offenses. (*Id*. at p. 1122.) After the prosecutor rested, they indicated the defendant wished to stipulate to the priors and aggravating factors. (*Ibid*.) The court did not advise the defendant of his right to a jury trial or of the direct consequences of the stipulation before accepting his stipulation; nor was there a written advisement or waiver of those rights or inquiry as to whether defendant discussed these rights with his defense counsel. (*Id*. at pp. 1122, 1124.) The *Kinnear* court reversed on the grounds there was nothing in the record indicating the defendant was aware of his right to a jury trial and the penal consequences of his stipulation and therefore, his stipulation was not knowing and voluntary. (*Id*. at p. 1124.)

The present case does not entail a bifurcated proceeding like in *Kinnear*. Instead, defendant entered a plea to the charged offenses, and admitted the enhancements and aggravating factor together. Defendant's written plea form and waiver lists defendant's specific charged offenses, enhancements and aggravating factor in writing, demonstrating

that the aggravating factor was integrated into the plea. As discussed, the plea form included defendant's affirmation that the effects of any prior conviction, enhancements and special allegations were explained and understood. Defense counsel attested to discussing with defendant her rights and "the direct consequences that may result from a plea," which is not limited to the charged offenses. As such, we reject defendant's attempt to separate the aggravating factor from the plea agreement and conclude *Kinnear*'s concerns do not apply here.

## DISPOSITION

We affirm the judgment.